## Commonwealth v. Dietz et al.

*Constitutional law — Prohibition Enforcement Act of March 27, 1923 — Intoxicating liquors—Sale—Public nuisance—Title of act—Trial by jury.*

1. Sections 6 and 7 of the Prohibition Enforcement Act of March 27, 1923, P. L. 34, declaring any place where intoxicating liquors are manufactured, sold, furnished or possessed to be a public nuisance, and providing for the issuance of an injunction to restrain the use of such place for one year, are not unconstitutional.

2. The title of the Prohibition Enforcement Act sufficiently indicates its purpose.

3. The act is not unconstitutional as denying the right to trial by jury. The right to trial by jury is not guaranteed by the Constitution in every case. Generally speaking, the legislature may provide any system of settlement or trial without coming in conflict with the provision of the Constitution, if trial by jury did not exist in such case when the Constitution was adopted.

Bill for injunction. Demurrer. C. P. Allegheny Co., Jan. T., 1925, No. 1221, in Equity.

Before Ford, Douglass and Rowand, JJ.

*George W. Woodruff*, Attorney-General; *Louis E. Graham*, Deputy Attorney-General; *Samuel H. Gardner*, District Attorney, and *Richard W. Martin*, City Solicitor, for Commonwealth.

*John S. Robb, Jr.*, and *John M. Henry*, for defendants.

ROWAND, J., March 18, 1925. — This matter comes before the court on demurrer by defendants to plaintiff's bill of complaint. The action is brought by the Commonwealth of Pennsylvania and is prosecuted in its behalf by George W. Woodruff, Attorney-General; Samuel H. Gardner, District Attorney of Allegheny County, and Richard W. Martin, Solicitor of the City of Pittsburgh, pursuant to the authority granted by section 7 of the Act of the General Assembly of the Commonwealth of Pennsylvania, approved March 27, 1923, P. L. 34, and known as the Prohibition Enforcement Act. Section 7, being in full, as follows:

"Section 7. An action to enjoin any nuisance defined in this act may be brought in the name of the Commonwealth of Pennsylvania by the Attorney-General of the State, or by the district attorney of the respective county, or by the solicitor of any municipality. Such action shall be brought and tried as an action in equity, and may be brought in any court having jurisdiction to hear and determine equity cases within the county in which the offence occurs. If it is made to appear by affidavit, or otherwise, to the satisfaction of the court that such nuisance exists, a temporary writ of injunction shall forthwith issue, restraining the defendant from conducting or permitting the continuance of such nuisance until the conclusion of the proceedings. If a temporary injunction is prayed for, the court may issue an order restraining the defendant and all other persons from removing or in any way interfering

with the intoxicating liquor or other things used in connection with the violation of this act constituting such nuisance. No bond shall be required in instituting such proceedings. It shall not be necessary for the court to find the property involved was being unlawfully used as aforesaid at the time of the hearing, but on finding that the material allegations of the petition are true, the court shall order that no intoxicating liquor shall be manufactured, sold, offered for sale, bartered, furnished or possessed in such room, house, building, structure, boat, vehicle or place, or any part thereof. Upon the decree of the court ordering such nuisance to be abated, the court may, upon proper cause shown, order that the room, house, building, structure, boat, vehicle or place shall not be occupied or used for one year thereafter; but the court may, in its discretion, permit it to be occupied or used if the owner, lessee, tenant or occupant thereof shall give bond with sufficient surety, to be approved by the court making the order, in the penal and liquidated sum of not less than five hundred dollars ($500), payable to the Commonwealth of Pennsylvania, for use of the county in which said proceedings are instituted, and conditioned that intoxicating liquors will not thereafter be manufactured, sold, offered for sale, bartered, furnished, possessed or otherwise disposed of therein or thereon, and that he will pay all fines, costs and damages that may be assessed for any violation of this act upon said property."

The action is brought for the purpose of enjoining and abating a certain public and common nuisance as defined in section 6 of the above act, which is alleged by the plaintiff to be existing on the premises of the defendants, situate at No. 305 Federal Street, City of Pittsburgh, Pa. Section 6, being in full, as follows:

"Section 6. Any room, house, building, boat, vehicle, structure or place where intoxicating liquor is manufactured, sold, offered for sale, bartered, furnished or possessed in violation of this act, and all intoxicating liquor and property kept or used in maintaining the same, is hereby declared to be a common nuisance, and any person who maintains such a common nuisance shall be guilty of a misdemeanor and, upon conviction thereof, shall be subject to the penalties hereinafter provided."

The bill sets forth substantially that the defendants are the owners and proprietors of the premises wherein intoxicating liquor is kept and sold in violation of the act, and the prayer of the complainants is:

(a) The defendants be directed to make answer.

(b) The defendants, their agents, etc., be perpetually enjoined from using the premises as a place where intoxicating liquor is sold, etc.

(c) That a peremptory writ of injunction issue.

(d) For a decree that said premises shall not be occupied or used for one year thereafter.

(e) That the sheriff of Allegheny County abate the nuisance.

(f) For a decree directing all intoxicating liquors on the premises to be destroyed.

(g) That an injunction in personam issue against the defendant, Arthur M. Dietz, owner and proprietor, perpetually enjoining him from manufacturing, selling, etc., any intoxicating liquor contrary to the act at any place within Allegheny County.

(h) General relief.

This case came up for hearing for a temporary writ of injunction before the court, and at that time defendants orally moved to dismiss the bill for substantially the same reasons now set forth in their demurrer. This motion was refused at the time, with leave, however, to defendants to raise the ques-

tions by demurrer or answer. Testimony was taken to the effect that intoxicating liquors were sold and possessed on the premises, and on Nov. 25, 1924, the court made an order directing that a temporary writ of injunction issue.

To the bill of complaint defendants demurred to the whole of the bill and assigned a number of reasons, and at the oral argument before the court *in banc*, the principal questions raised by the defendants, as we understand them, are as follows: 1. That the act is unconstitutional. 2. Sections 6 and 7 of the act are unconstitutional.

We cannot agree with the contention of the defendants that the act is unconstitutional, as set forth in their eighth reason, which is as follows: "Said Act of March 27, 1923, is unconstitutional and void, in that said act contains more than one subject which is not clearly expressed in its title, thus conflicting with section 3 of article III of the Constitution of Pennsylvania."

This has been decided by our appellate court in the case of Com. ex rel. *v.* Cooper, 277 Pa. 554.

In the case of Booth & Flinn *v.* Miller, 237 Pa. 297, 304, as was said by Mr. Justice Mestrezat: "We have repeatedly said that the title need not embody all the distinct provisions of the bill nor serve as an index or digest of its contents, but that it is sufficient if the title fairly gives notice of the real subject of the bill, so as reasonably to lead to an inquiry into what is contained in the body of the bill."

As to the constitutionality of the sections complained of, namely 6 and 7, section 6 declares what is to be considered a public nuisance, namely, "any room, house, building . . . or place where intoxicating liquors are manufactured, sold, offered for sale, bartered, furnished or possessed in violation of this act. . . ." Section 7 provides the method for the abatement of any nuisance defined in this act. It provides that it may be brought in the name of the Commonwealth by the Attorney-General of the State, or by the district attorney of the respective county, or by the solicitor of any municipality. That it shall be brought and tried as an action in equity. That the court is not to issue an injunction simply on the charge that a nuisance exists. The section provides that if it is made to appear, by affidavit or otherwise, to the satisfaction of the court that such nuisance exists, a temporary writ of injunction shall issue restraining the defendant until the conclusion of the hearing. Upon final hearing, the court may, in its decree, order such nuisance to be abated upon proper cause shown or order that the room, house, building or structure . . . or place shall not be occupied or used for one year thereafter, but the court may, in its discretion, permit it to be occupied or used if the owner, lessee, tenant or occupant thereof shall give bond, with sufficient surety, to be approved by the court making the order, . . . conditioned that intoxicating liquors will not thereafter be manufactured, sold, etc.

On a comparison with the National Prohibition Act, passed Oct. 28, 1919, 41 Stat. at L. 305, and known as the Volstead Act, we find that section 6 of the State Prohibition Act, relating to public and common nuisance, follows almost *verbatim* the first clause of section 21 of the National Prohibition Act. A further comparison of section 7 of our State Prohibition Act, relating to the abatement of nuisances [shows that], with but few changes, it is almost in the wording of section 22 of the National Prohibition Act. It is to be noted, however, that section 24 of the National Prohibition Act provides for violations of injunctions, either temporary or permanent. This is not to be found in our State Prohibition Enforcement Act.

It has been held in a number of District Courts of the United States that sections 21, 22 and 23 of the National Prohibition Act are constitutional. One

of the latest cases on this subject is the case of the United States v. Boynton, as reported in 297 Fed. Repr. 261 (1924).

This was an action to enjoin a nuisance under sections 21, 22 and 23 of the National Prohibition Act, and it was held that: "It cannot be doubted that Congress may constitutionally declare that a place occupied and used for the sale of intoxicating liquors is a public nuisance, and that the effect of such declaration is to make such a place a nuisance, subject to abatement as such by courts of equity." Citing Federal Court decisions.

It was further held: "It must also be regarded as settled law that whatever means are reasonably necessary to abate such a nuisance, even to the extent of taking or destroying the property of an innocent owner, may be adopted without infringing any constitutional rights." Quoting numerous United States Reports.

While we do not believe our appellate court has been called upon to pass upon the constitutionality of the 6th and 7th sections of the act, we do find, however, the case of Mugler v. Kansas, as reported in 123 U. S. Reps. 623. This case involves an inquiry into the validity of certain statutes of the State of Kansas relating to the manufacture and sale of intoxicating liquors. The particular section of the act in question was the 13th section of the Act of March 7, 1885, as appears on page 236 of the Kansas Laws as an amendment to the prohibition law. This section reads as follows: "All places where intoxicating liquors are manufactured, sold, bartered or given away in violation of any of the provisions of this act, or where intoxicating liquors are kept for sale, bartered or delivered in violation of this act, are hereby declared to be common nuisances, and upon the judgment of any court having jurisdiction finding such place to be a nuisance under this statute, the sheriff, his deputy, or under-sheriff, or any constable of the proper county, or marshal of any city where the same is located, shall be directed to shut up and abate such place. . . . The Attorney-General, county attorney or any citizen of the county where such nuisance exists or is kept or is maintained may maintain an action in the name of the state to abate and perpetually enjoin the same. . . ."

In construing this section, Mr. Justice Harlan delivered the opinion of the court and found:

"State legislation which prohibits the manufacture of spirituous, malt, vinous, fermented or other intoxicating liquors within the limits of the state, to be there sold or bartered for general use as a beverage, does not necessarily infringe any right, privilege or immunity secured by the Constitution of the United States or by the amendments thereto.

"Lawful state legislation, in the exercise of the police powers of the state, to prohibit the manufacture and sale within the state of spirituous, malt, vinous, fermented or other intoxicating liquors to be used as a beverage, may be enforced against persons who, at the time, happen to own property whose chief value consists in its fitness for such manufacturing purposes, without compensating them for the diminution in its value resulting from such prohibitory enactments.

"A prohibition upon the use of property for purposes that are declared by valid legislation to be injurious to the health, morals or safety of the community is not an appropriation of property for the public benefit in the sense in which a taking of property by the exercise of the state's power of eminent domain is such a taking or appropriation.

"The destruction, in the exercise of the police power of the state, of property used in violation of law, in maintaining a public nuisance, is not a taking of

property for public use and does not deprive the owner of it without due process of law.

"A state has constitutional power to declare that any place kept and maintained for the illegal manufacture and sale of intoxicating liquors shall be deemed a common nuisance and be abated, and at the same time to provide for the indictment and trial of the offender.

"There is nothing in the provisions of section 13 of the statute of the State of Kansas of March 7, 1885, amendatory of the Act of Feb. 19, 1881, so far as they apply to the proceedings reviewed in these cases, which is inconsistent with the constitutional guarantees of liberty and property; and the equity power conferred by it to abate a public nuisance without a trial by jury is in harmony with settled principles of equity jurisprudence."

The nature of equitable remedy in case of public nuisances is well defined by Mr. Justice Harlan in Mugler v. Kansas, 123 U. S. Reps. 623, 672:

"Equally untenable is the proposition that proceedings in equity for the purpose indicated in the 13th section of the statute are inconsistent with due process of law. 'In regard to public nuisances,' Mr. Justice Story says, 'the jurisdiction of courts of equity seems to be of a very ancient date and has been distinctly traced back to the reign of Queen Elizabeth. The jurisdiction is applicable not only to public nuisances, strictly so-called, but also to purprestures upon public rights and property. . . . In case of public nuisances, properly so called, an indictment lies to abate them and to punish the offenders. But an information also lies in equity to redress the grievance by way of injunction:' 2 Story's Equity, §§ 921 and 922.

"The ground of this jurisdiction in case of purpresture, as well as of public nuisances, is the ability of courts of equity to give a more speedy, effectual and permanent remedy than can be had at law. They cannot only prevent nuisances that are threatened and before irreparable mischief ensues, but arrest or abate those in progress, and by perpetual injunction protect the public against them in the future; whereas, courts of law can only reach existent nuisances, leaving future acts to be the subject of new prosecutions or proceedings. This is a salutary jurisdiction, especially where a nuisance affects the health, morals or safety of the community."

Defendants further contend that the section is unconstitutional and void, in that it seeks to deprive the defendants of their constitutional right to have a jury pass upon controverted questions of fact. Mr. Justice Sterrett, in delivering the opinion of the court in the case of School District of the Borough of Duquesne v. Pittsburgh et al., 184 Pa. 156, held: "The right to trial by jury is not guaranteed by the Constitution in every case. The language of section 6 of article I is: 'Trial by jury shall be as heretofore and the right thereof remain inviolate.' In Moore v. Houston, 3 S. & R. 169, an act providing for fines inflicted for breach of military duty without right to trial by jury was adjudged constitutional. So, also, trial of contested elections by the court: Ewing v. Filley, 43 Pa. 384; and summary convictions: Byers v. Com., 42 Pa. 89. See, also, Rhines v. Clark, 51 Pa. 96; Haines v. Levin, 51 Pa. 412. Generally speaking, the legislature may provide any system of settlement or trial without coming in conflict with the provision of the Constitution if trial by jury did not exist in such case theretofore: Van Swartow v. Com., 24 Pa. 131."

It has also been held in the case of Buffalo Branch, Mutual Film Corporation, v. Breitinger, reported in 250 Pa. 225, that: "Nothing but a clear violation of the Constitution—a clear usurpation of power prohibited—will justify the judicial department in pronouncing an act of the legislative department

. Commonwealth v. Dietz et al.

unconstitutional and void. The police power of the Commonwealth extends to all regulations affecting the health, good order, morals, peace and safety of society, and under it all sorts of restrictions and burdens may be imposed, and when they are not in conflict with any constitutional principles, they cannot be successfully assailed in a judicial tribunal."

In this case, Martin, P. J., of the Philadelphia Common Pleas Court, delivered a very able opinion, and quotes many authorities sustaining his conclusions.

After a careful consideration of the pleadings, the arguments and briefs of counsel, we are not convinced that sections 6 and 7 of the Act of March 27, 1923, P. L. 34, known as the Prohibition Enforcement Act, are unconstitutional.

We are, therefore, of the opinion the demurrer should be overruled. Defendants to answer within fifteen days.

From William J. Aiken, Pittsburgh, Pa.